IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | : |
| v. | :  17-Cr-51 (BAH) |
| RAUL FLORES HERNANDEZ | : |

**DEFENDANT RAUL FLORES'**
**MEMORANDUM IN AID OF SENTENCING**

**INTRODUCTION**

Defendant Raul Flores Hernandez respectfully submits this memorandum in aid of the Court's sentencing, currently scheduled for November 3, 2023. On March 8, 2023, the defendant voluntarily entered a plea of guilty (without a plea agreement) to one Count of Conspiracy to distribute Five Kilograms or More of Cocaine Knowing and Intending that it would be Imported into the United States and Aiding and Abetting in violation of 21 United States Code §959(a). A contested hearing is scheduled for September 6, 7, and 8, 2023, where the government is expected to present the testimony of four witnesses.

The defendant is an almost 71-year-old Mexican national, who was arrested on July 20, 2017, and by the time of his sentencing will have been incarcerated for more than six (6) years. The defendant endured the COVID-19 pandemic, the separation from family and loved ones, and it is undeniable that these were extremely harsh conditions of confinement for any person, let alone a senior citizen. He pled guilty in this case and saved the Government the time and expense of a trial, but he contests the Government's generalized assertion that he was, in the vernacular, a drug kingpin. For all of the reasons stated herein, the defense requests that this Court impose the mandatory minimum of ten years, or 120 months.

1

**SENTENCING GUIDELINE CALCULATION/BACKGROUND OF CASE**

Defendant Raul Flores is pending sentencing and admits to membership in a drug trafficking conspiracy with a quantity of between one hundred and fifty (150) and four hundred and fifty (45) kilograms of cocaine attributable to him. That corresponds to a sentencing guideline level 33 (level 36 for drug quantity minus three levels for acceptance of responsibility). With an additional two-level reduction because of the pending change in U.S.S.G. Section 4C1.1, captioned "*Adjustment For Certain Zero Point Offenders*," the defendant's Adjusted Guideline Range is 31, which corresponds to 108-135 months. Because of the mandatory minimum, the Court must impose a ten-year sentence.

The contested sentencing hearing in this case is required because the parties could not agree as to the application of other guideline sentencing factors. At a minimum, however, - and in sharp contrast to many other drug traffickers - including one that was recently sentenced to life by this Court, it is undisputed that Mr. Flores has never engaged in violence. And unlike many other defendants who come before this Court to be sentenced having devoted all of their time and attention solely to drug trafficking, Mr. Flores had an active business importing and selling "no name" brand electronics in Mexico that he imported from the United States. Moreover, Mr. Flores invested his earnings to purchase a successful nightclub, which brought him some level of minor fame. Finally, because of his gregarious personality Mr. Flores was well known to have had passing friendships with many people – and the cooperating witnesses in this case are using those relationships to wrongly claim that he was involved with drug trafficking with virtually every Mexican cartel in existence over the course of the last forty years. The cross-examination

of these witnesses at the sentencing hearing will reveal that these claims are not worthy of belief by this Court.

In anticipation of the sentencing hearing, the Court is advised that the defense objects to the Government's assertions that Mr. Flores was: (1) a leader; and that (2) he was responsible for more than 450 kilograms of cocaine. In addition, the Government argued in its sentencing memorandum that Mr. Flores should receive upward adjustments for: (1) use of an aircraft to import or export a controlled substance and that (2) bribery or attempted bribery of a law enforcement office to facilitate the commission of the offense. The evidence that was produced by the Government in this case – and reviewed in detail by the defense - simply do not support these sentencing enhancements.

Mr. Flores is almost 71 years old and the 120-month sentence requested by the defense is appropriate given that any sentence much longer would be the equivalent to a life sentence. He has already spent almost six and a half years incarcerated,[1] two and a half of those years incarcerated in the United States where he has been shuttled from jail to jail. First, the defendant was incarcerated at the D.C. Jail, but when the Marshals determined that the conditions at the facility violated the human rights of its inmates, he was moved to FCI Lewisburg, where he endured physical abuse at the hands of his cellmate[2] before he was transferred to the Central Virginia Regional Jail. In an effort to locate the defendant closer to the Washington, D.C. Metropolitan region, Mr. Flores was then transferred to the Rappahannock Regional Jail for only

---

[1] While awaiting extradition to the United States, Mr. Flores was detained in the Altiplano Prison in Central Mexico, known for its harsh and restrictive conditions of confinement.
[2] Undersigned confirmed the assault with other clients who informed her that the assailant admitted to attacking the elder Mr. Flores for his perceived "lack of respect." Undersigned promptly alerted the prosecutor then involved in the case of the incident.

eight days before he was moved back to the Central Regional Jail, in Orange, Virginia, where he has been continuously detained ever since.

Apart from the dreadful conditions at the D.C. Jail during the pandemic, and the physical abuse at the hands of his cellmate, this almost 71-year-old defendant with no English language skills has been the victim of theft and bullying while incarcerated in the local jails. The defendant accepted this abuse because he did not want to escalate the problems. These events were reported by undersigned to Government counsel to no avail. Moreover, because of his advanced age, the defendant requires more medical attention and thus far has received barely minimal medical treatment, despite repeated requests. When a person is seventy-one years old, even minor health problems can have major consequences.

Finally, Mr. Flores is a beloved husband, father of ten children and grandfather of more than thirty grandchildren. Unfortunately, most of his immediate family members do not have visas to enter the United States and Mr. Flores' time incarcerated has generally been alone in this country, save for visits by undersigned counsel and a paralegal.  Once he is sentenced and moved to a Bureau of Prisons facility, Mr. Flores will spend his time incarcerated alone without the ability to see his loved ones, possibly ever.

## SENTENCING ANALYSIS

This section analyzes the various factors which the Court should take into consideration when imposing sentence in this case. This memorandum does not repeat in detail the rules that govern post-*Booker* sentencings, given the Courts' extensive experience with sentencing matters.

**ROLE IN OFFENSE**

The Government argued in its sentencing memorandum that the defendant was a leader in this case and eligible for a four-level adjustment.  Until recently when the Government provided

additional discovery under 18 U.S.C. 3500 ("Jenck's" material), no specific information had ever been provided in discovery that would lead a reasonable person to conclude that Mr. Flores was a leader or organizer at any level. It is clear that the witnesses that will testify for the government are not neutral participants in this judicial process and the defense expects to demonstrate through cross examination and its own witnesses that Mr. Flores was in no way a leader.

**COVID 19**

Mr. Flores was extradited from Mexico and arrived at the D.C. Jail in February 2021, at the height of the pandemic. As a result, the defendant was subjected to exponentially harsh conditions of confinement at the D.C. Jail, where all in person legal visits had been suspended, and the conditions of confinement were found to be so egregious that a civil action was brought against the District claiming that the inmates' Due Process rights under the Fifth and the Eighth Amendment against prohibition against cruel and unusual punishment were being violated. Most of the federal inmates, including Mr. Flores were removed from the D.C. jail at the end of October 2021.

Mr. Flores was sent to FCI Lewisburg, where he spent a couple of months, isolated from most of the other inmates because of a separation order. Without the protection of other Spanish speaking inmates, Mr. Flores was assaulted by his cellmate. Then he was sent to the Alexandria Adult Detention Facility, where he spent just a couple of days. He was then sent to the Central Virginia Regional Jail where he spent several weeks in a quarantine unit, until undersigned filed a motion with this Court. Later, Mr. Flores was moved to the Rappahannock Regional Jail, where he spent a week isolated in a quarantine unit before he was moved back to the Central

Virginia Regional Jail. Each time Mr. Flores was moved he was placed in isolation in extremely harsh conditions of confinement, all his belongings, including his shoes and glasses taken away. These factors provide a basis for the Court to grant a downward variance.

## THE FEDERAL SENTENCING FACTORS ALL SUPPORT THE REQUESTED TEN-YEAR SENTENCE

Under the federal sentencing statute, 18 U.S.C. Code Section 3553(a), the other factors to be considered in the imposition of sentencing include: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentencing to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (3) specific and general deterrence; (4) the need to provide the defendant with training, medical care, or treatment; available sentencing alternatives; (5) consistency in sentencing among similarly-situated defendants; and (6) the need to provide restitution. See 18 U.S.C. §3553(a).

**Defendant Raul Flores/Role in Offense**

Defendant Raul Flores is a seventy-one-year Mexican citizen, who was arrested and extradited to the United States. As detailed in the Presentence Report, Mr. Flores was raised in a large family of 18 children in very humble circumstances. He traveled and worked repairing upholstery in the United States for approximately ten years in the 1970s and returned to Mexico in the 1980s with his children, upon the death of his first wife (of blood cancer).

Upon his return to Mexico, Mr. Flores worked selling inexpensive watches in Mexico that he purchased in the United States. He slowly developed a relationship with an individual in Texas who began to sell him watches on credit and then later large quantities of televisions and other electronics.[3] Mr. Flores had a well-known thriving business and expanded his business

---

[3] Undersigned counsel has been provided boxes and boxes of receipts from the business located in Laredo, Texas.

portfolio to include a nightclub where he promoted local artists by allowing them to sing in his club. He also turned to his love of soccer and invested in a third-rate soccer team and sponsored local youth in his community to compete in and around Mexico and Central and South America.

It was during one of his many trips with his soccer team in approximately 2007 that he was approached by another soccer *aficionado* about investing in loads of cocaine. Mr. Flores subsequently invested in three cocaine loads of thirty kilograms each. The third load was "lost" and he was held responsible for the money. At that point, he stopped any involvement with drugs until in 2015, when he was released from a Mexican prison after spending eighteen months for money laundering – because he was absolved of the charges against him. During his arrest, the Mexican government literally destroyed his family home, searching for evidence of drug trafficking and money laundering.[4]

When Mr. Flores was released from prison in Mexico at the end of April 2015, he was in a desperate position with no source of income and his family home decimated. That is when he made the unfortunate decision to try his hand again in drug trafficking. And in stereotypical fashion he reached out to "friends" he made while incarcerated in Mexico. All the discovery that was produced to the defense in this case concerned drug tracking efforts from Mr. Flores' release in April 2015 until his arrest in August 2017. That evidence – which consists almost entirely of intercepted blackberry communications – was interpreted by the Government to attribute to the defendant very large quantities of cocaine. Mr. Flores entered a plea of guilty in this case and admitted culpability for international drug trafficking but insists that the prosecution's conclusions vastly overstate his actual participation.

---

[4] It is undersigned's understanding that approximately six to seven million dollars were seized from his family home but after his Mexican lawyers were able to demonstrate the source of the funds seized, the Mexican government has agreed in "theory" to return some of the seized funds.

7

Notwithstanding his admission of guilt, the defendant continues to enjoy the support of his family and loved ones. Undersigned has been communication with Mr. Flores' wife and several of his children and grandchildren. They remain unwavering in their commitment to Mr. Flores and have explained very clearly that he is dearly loved and missed by everyone who knew him. He was glue that brought the entire family together.[5]

**Seriousness Of The Offense/Promote Respect For The Law/Appropriate Punishment**

There is no doubt that the crime for which defendant Raul Flores admitted his guilt is a serious matter. The defendant understands that he violated the law and pled guilty to what he actually did. This is Mr. Flores' first conviction, and the defense believes that a ten-year sentence for this particular 71 year old defendant under the particular facts of this case is appropriate.

**Specific and General Deterrence/Prevent Future Crimes**

The factor of specific deterrence also supports the requested sentence. The defendant will address this Court directly at the time of his sentencing, but he has indicated to counsel that he never intends to ever be involved in criminal activity again. Given all the time he has spent incarcerated at times under very harsh conditions, he has stated to undersigned counsel that he only wants to live out the rest of his days living simply, surrounded by family and loved ones.

Given his age and attendant medical issues his likelihood of recidivism is greatly decreased. This principle has been recognized in numerous cases where a below guideline sentence was imposed as the result of a defendant's age. See United States v. Martinez, 2007 WL 593629 (D. Kan)(according to data compiled by the Federal Sentencing Guideline

---

[5] Undersigned counsel has received over 200 letters of support from his loved ones and members of his community and is in the process of having all these letters translated for submission to the Court in advance of the sentencing in this case.

Commission recidivism decreases with age). Accord United States v. Jayyousi, 657 F.3d 1085, 1171 (11th Cir. 2007).  See United States v. Carmona-Rodriguez, 2005 WL 840464 (S.D.N.Y.)(district court noted that below guidelines sentence appropriate for defendants "who were over the age of forty on the grounds that such defendants exhibit markedly lower rates of recidivism").

As to general deterrence, it is clear that the government is aggressively prosecuting international drug trafficking.  The defendant's arrest and extradition to the United States has been well publicized and is well known in the Spanish speaking world.  It is no secret to anyone involved in international drug trafficking how seriously the United States government takes international drug trafficking and arrests and prosecutes those involved in such crimes.  The publicization of this case has already made clear to others that this conduct is worthy of significant punishment and that the term of imprisonment will be served in the United States.

***Adverse Consequences Of The Defendant's Status As Foreign National***

Finally, the defendant's status as a foreign national has adverse consequences for the defendant during his period of incarceration in this case.  Because the defendant is not a United States citizen, he is not eligible to work in the Federal Prison Industries while incarcerated.  More importantly, because he was extradited to the United States, there is an immigration detained lodged against him, the defendant will not be eligible for designation to a halfway house six months prior to the conclusion of his sentence.  Finally, at the conclusion of his sentence, if he survives, the defendant will not be released, but rather will be sent to an Immigration and Customs Enforcement ("ICE") organizes his return to Mexico.  ICE ordinarily waits until there are sufficient persons to be returned to their country of origin to make the flight cost effective.

Consequently, there is no meaningful way to determine how long the defendant will remain in immigration custody until he is actually deported, which could take months.

The Court of Appeals has recognized that ineligibility for halfway house treatment and the additional period of incarceration pending deportation is a basis for a downward sentence variance. In United States v. Smith, 27 F.3d 649 (D.C. Cir. 1994), the district court gave the defendant a six-month downward variance for these reasons. We ask that this Court take this circumstance into consideration here.

## CONCLUSION

Even under the sentence requested by the defense, the defendant Raul Flores face a lengthy period of incarceration that he may not survive, given his age. In the final analysis, he pled guilty and admitted his criminal responsibility. For all these reasons, the defense respectfully requests that this Court sentence the defendant Raul Flores to 120 months, in accordance with the arguments contained herein.

Respectfully submitted,

/s/ *Sandi S. Rhee*
Sandi S. Rhee (DC Bar No. 502417)
228 S Washington Street,
Suite 300
Alexandria, Virginia 22314
(202)285-8366 cellular phone
SandiRheeLaw@Gmail.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was served to the Government counsel via electronic this 30th of August, 2023.

                                            /s/
                                Sandi S. Rhee
                                228 S Washington Street,
                                Suite 300
                                Alexandria, VA 22314
                                (202) 285-8366 cellular
                                SandiRheeLaw@Gmail.com