UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RAUL FLORES HERNANDEZ,<br><br>Defendant. | Criminal Action No. 17-51 (BAH)<br><br>Judge Beryl A. Howell<br><br>**UNDER SEAL** |

## MEMORANDUM OPINION AND ORDER

Defendant Raul Flores Hernandez pled guilty, on March 8, 2023, without a plea agreement, to the single charge against him of conspiring, from around 1983 until March 8, 2017, the date of the indictment, to distribute five kilograms or more of cocaine, intending and knowing that the cocaine would be imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963. *See* Indictment, ECF No. 1; Min. Entry (Mar. 8, 2023). At his plea hearing, defendant admitted to his participation in the charged conspiracy, "[f]rom in or about 2007, within the countries of Bolivia, Peru, Brazil and Mexico," and his accountability for "more than 150 kilograms but not more than 450 kilograms" of cocaine. Def.'s Statement of Facts ¶¶ 1–2, ECF No. 29.

At the three-day sentencing hearing held in September 2023, the government presented, through four witnesses, evidence to support the application of several disputed sentencing enhancements, including that defendant: (1) is accountable for 450 or more kilograms of cocaine, warranting a base offense level of 38, under the applicable advisory guidelines, U.S.S.G. § 2D1.1(a)(5) and (c)(1); (2) was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, warranting a four-level upward adjustment under U.S.S.G. § 3B1.1(a); (3) imported or exported a controlled substance using an aircraft,

1

warranting a two-level increase under U.S.S.G. § 2D1.1(b)(3)(B); and (4) bribed or attempted to bribe a law enforcement officer to facilitate the commission of the offense, warranting a two-level increase under U.S.S.G. § 2D1.1(b)(11). Defendant objects to each of the foregoing enhancements. *See* Joint Resp. to Aug. 14, 2023 Min. Order, ECF 52; *see also* Min. Entry (Sept. 6, 2023); Min. Entry (Sept. 7, 2023); Min. Entry (Sept. 18, 2023).

Essential to defendant's challenge to the sentencing enhancements urged by the government is discrediting the government's witnesses presented at the sentencing hearing. In connection with this effort, defendant sought, pursuant to Federal Rule of Criminal Procedure 17(c), and without objection from the government, the issuance of two subpoenas for the recorded inmate phone calls of Elipidio Mojarro-Ramirez, one of the four government witnesses at the sentencing hearing. *See* Def.'s Sealed Mot. for Issuance of Rule 17(c) Subpoena ("Def.'s Rule 17(c) Mot.") at 1, ECF No. 57; *see also* Govt.'s Sealed Resp. to Def.'s Mot. for Issuance of Rule 17(c) Subpoena at 1, ECF No. 63. Defendant argued that Mojarro-Ramirez had "actively" sought out information to use in his testimony at the sentencing hearing, including communicating with other inmates and their family members and scouring magazines. Def.'s Rule 17(c) Mot. at 1–2. Defendant's motion to subpoena the recorded inmate phone calls was granted. Sealed Min. Order (Aug. 30, 2023).

On November 1, 2023, as authorized by the Court's September 29, 2023 minute order, defendant filed under seal, *inter alia*, four of the transcripts produced in response to the Rule 17(c) subpoena, including one of a July 19, 2023 call titled "Conversation Between Elipidio Mojarro-Ramirez and Unidentified Male" ("July 2023 Call"), to supplement his sentencing memorandum. *See* Sealed Exhibits, Ex. 1 at 1–50, ECF No. 73; *id.* at 42–50 (July 2023 Call). During this call, Mojarro-Ramirez asked the Unidentified Male to help him "recall" the details of

2

"how [he] met Flores [Hernandez]." *Id.* at 45; *see also* Sealed Affidavit of Manuel Guerra, III ("Guerra Aff.") ¶¶ 7–8, ECF No. 77. At the beginning of the call, as with every phone call made by an inmate at the Alexandria Detention Facility, Mojarro-Ramirez was provided the following automated warning in Spanish:

> Automated Warning: After the tone, say United States.
> Mojarro-Ramirez: United States.
> Automated Warning: Thank you. You have sixty-three dollars and fifty-four cents. This call will cost .20 cents per minute plus any federal taxes. **This call is not private, will be recorded and monitored. If you think that it should be a private call, hang up and follow the center's instructions to register this number as a private number.** It is possible that you will not hear any sound during the acceptance of your call. Please do not hang up.

Def.'s Sealed Opp'n Govt.'s Emergency Mot. to Strike ("Def.'s Opp'n") at 2–3, ECF No. 74.

Over a month before filing these transcripts, defendant provided the government with an audio copy of all the phone calls obtained pursuant to the Rule 17(c) subpoena and, several weeks later, identified the phone calls that it deemed most relevant to defendant's sentencing, including the July 2023 Call. *See id.* at 1; Govt.'s Sealed Emergency Mot. to Strike ("Govt.'s Mot.") at 2, ECF No. 70. Based on this information, the government, on November 2, 2023, contacted Mojarro-Ramirez's attorney, Manuel Guerra, who confirmed that he is the "Unidentified Male" in the July 2023 Call and was Mojarro-Ramirez's attorney in July 2023, and thus claimed that this call was protected by the attorney-client privilege. *See* Govt.'s Mot. at 2–3. On November 3, 2023, the government filed the instant motion to strike the July 2023 Call as attorney-client privileged.

I.   DISCUSSION

The attorney-client privilege, the "oldest of the privileges for confidential communications known to the common law," applies to confidential communications "between

3

attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)); *see also* Fed. R. Evid. 501 (explaining that the "common law . . . governs a claim of privilege").  "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389.  Since the effect of the privilege is to "withhold[] relevant information from the fact-finder," however, "it applies only where necessary to achieve its purpose" and "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976).

For this reason, the privilege is not absolute and may be waived by the holder of the privilege, such as by voluntary disclosure of the confidential information to third parties.  *See Protect Democracy Project, Inc. v. Nat'l Sec. Agency*, 10 F.4th 879, 891 (D.C. Cir. 2021); *see also In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) ("Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege."); *United States v. AT&T Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("Any voluntary disclosure by the holder of such a privilege is inconsistent with the confidential relationship and thus waives the privilege.").  The party asserting the privilege bears the burden of establishing its essential elements.  *See Fed. Trade Comm'n v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980) ("Where . . . we have not been provided with sufficient facts to state with reasonable certainty that the privilege applies, this burden is not met.").

Here, neither party makes any meaningful attempt to dispute whether the July 2023 Call is privileged.  The government simply asserts that Guerra was representing Mojarro-Ramirez in

4

July 2023, ignoring that, to be privileged, a communication must also be "made for the purpose of obtaining or providing legal advice to the client." *See* Govt.'s Mot. at 2–3.  Defendant, in turn, states in a footnote that he "does not agree that the phone calls were ever protected," with no mention of whether the privilege applies in the body of his opposition.  *See* Def.'s Opp'n at 1 n.1.  Put differently, both parties assume that the privilege applies to the July 2023 Call in conducting their analysis of whether it should be struck.  *See id.* at 1; Govt.'s Sealed Reply Supp. Mot. to Strike ("Govt.'s Reply"), ECF No. 76; Def.'s Sealed Combined Mot. for Leave to File Sur-Reply & Sur-Reply in Opp'n to Govt.'s Mot. to Strike ("Def.'s Sur-Reply"), ECF No. 79.[1]

Even assuming, as the parties do, that the July 2023 Call is privileged, defendant is correct that Mojarro-Ramirez has waived any such privilege attached to this conversation because he undisputedly knew the call was being recorded.  While the D.C. Circuit may not have spoken on the issue, courts faced with this question have consistently concluded that when incarcerated individuals are aware that their calls are being recorded, these calls are not protected by any privilege that might otherwise have applied.  *See United States v. Mejia*, 655 F.3d 126, 132–34 (2d Cir. 2011) (concluding that "where an inmate is aware that his or her calls are being recorded, those calls are not protected" by attorney-client privilege, explaining that "[t]he fact that the call was being recorded amounts essentially to the presence of an unsympathetic third party—BOP—listening in," and reasoning that defendant's "awareness of the presence of this

---

[1]     Defendant's Motion for Leave to File a Sur-Reply, ECF No. 79, is GRANTED, over the government's objection.  District courts have broad discretion to grant the filing of a sur-reply but "only to address new matters raised in a reply, to which a party would otherwise be unable to respond."  *González-Vera v. Townley*, 83 F. Supp. 3d 306, 315 (D.D.C. 2015) (emphasis in original omitted) (quoting *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276 (D.D.C. 2002)).  The government's motion to strike simply states that Guerra "was representing Mr. Mojarro Ramirez in July 2023," the July 2023 Call "contained a privileged attorney-client communication," and "a phone call is the only way for [Guerra] to provide timely assistance" or otherwise communicate with Mojarro-Ramirez—with no explanation why the call might be privileged or why any privilege has not been waived and no mention of the warning that the call would be recorded.  *See* Govt.'s Mot. at 2–3.  In reply, the government still fails to address whether Mojarro-Ramirez has waived his privilege but argues, for the first time and supported by an affidavit by Guerra containing new factual representations, that any disclosure was inadvertent pursuant to Federal Rule of Evidence 502(b).  *See* Govt.'s Reply at 2.  This certainly qualifies as a "new matter[] raised in a reply," to which defendant is permitted to respond in a sur-reply.

5

third party, and his decision to nevertheless" share the information by recorded phoneline "demonstrates an absence of the affirmative action required to preserve the confidentiality of his statements"); *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003) ("The presence of the prison recording device destroyed the attorney-client privilege.  Because the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations would remain private.  The presence of the recording device was the functional equivalent of the presence of a third party."); *see also United States v. Harrelson*, 754 F.2d 1153, 1169–70 (5th Cir. 1985) (concluding that spousal privilege does not apply to conversations during a prison visit); *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998) (explaining that "the marital communications privilege protects only communications made in confidence" and thus does not apply "where the spouse seeking to invoke the communications privilege knows that the other spouse is incarcerated" in light of the "well-known need for correctional institutions to monitor inmate conversations").  The government offers no reason to depart from this principle here, where Mojarro-Ramirez was explicitly informed that his "call [was] not private" and would "be recorded and monitored" and was expressly directed to "hang up and follow the center's instructions to register this number as a private number" if the call "should be a private call."  That Mojarro-Ramirez, who has been incarcerated for many years in different detention centers on two separate occasions, knew that his calls were subject to being recorded and that alternative private means of speaking to his attorney were available, but nonetheless chose to use the recorded phone line, destroys any expectation of confidentiality and prevents claims of attorney-client privilege.

Relying on Federal Rule of Evidence 502, the government argues that disclosure should not operate as a waiver because any disclosure was inadvertent, and Mojarro-Ramirez "took

reasonable steps to prevent disclosure," and "promptly took reasonable steps to rectify the error." Govt.'s Reply at 2 (quoting Fed. R. Evid. 502(b)).  Specifically, the government contends that Mojarro-Ramirez hired and "reasonably relied" on his "attorney with twenty-five years of experience," and that both "Mojarro Ramirez and his attorney subjectively believed and intended that their communication—even if recorded—would not be disclosed to others."  Govt.'s Reply at 2.  In his affidavit justifying his "subjectively reasonable belief," Guerra explains that inmate phone calls are "the only realistic way" for Mojarro-Ramirez, who was incarcerated in Virginia, to contact Guerra, who resides in Texas.  Guerra Aff. ¶¶ 3–4, 9; *see also* Govt.'s Mot. at 2 ("[F]or an attorney that lives and works far away from the detention facility in which her client is confined, phone communication may be the only way to provide timely legal assistance.").  He emphasizes his "25 year legal practice," which "is centered in Texas," and asserts, with no citations, that "the standard practice in Texas jails is that—while inmate phone calls are routinely recorded—once any party reviewing such a recording determines that it involves a consultation between an attorney and client, such recording is then deemed privileged, and is not made available for use by third-parties."  Guerra Aff. ¶ 5.  The government and Guerra's arguments are unpersuasive for several reasons.

First, even setting aside the conclusory nature of the government's claim that Mojarro-Ramirez's belief that the July 2023 Call was privileged was "subjectively reasonable," reliance on this subjective belief is unavailing.[2]  For attorney-client communications to be privileged, any "subjective expectation of confidentiality" must also be "objectively reasonable."  *Convertino v. Dep't of Justice*, 674 F. Supp. 2d 97, 110 (D.D.C. 2009); *see also In re Grand Jury Subpoena*,

---

[2]  As defendant correctly points out, "[t]he affidavit summarily concludes that [Mojarro-Ramirez] had a 'subjectively reasonable' belief that the calls were protected by the privilege without elucidation as to how or when that belief was formed.  The failure to provide detail about any such discussions is a conspicuous absence of proof."  Def.'s Sur-Reply at 4.

7

415 F.3d 333, 338 (4th Cir. 2005); *United States v. Murra*, 879 F.3d 669, 681–82 (5th Cir. 2018); *United States v. Roberts*, 84 F.4th 659, 670 (6th Cir. 2023).  Mojarro-Ramirez is "highly intelligent and no neophyte at prison life," *Harrelson*, 754 F.2d at 1169, having served time in U.S. prison on at least two separate occasions beginning in the 1980s.  He was informed that his call was not private and would be recorded.  Coupled with the overwhelming caselaw concluding that calls between an incarcerated individual and his lawyer on an obviously recorded phone line are not protected by the attorney-client privilege, Mojarro-Ramirez's "subjective belief" that his call was confidential was not objectively reasonable.

Second, the relevance of Mojarro-Ramirez's "reasonabl[e] reli[ance] on his attorney to guide him through the legal process" is unclear.  Govt.'s Reply at 2.  The government does not contend, for example—nor does the transcript suggest—that Guerra told Mojarro-Ramirez that their phone conversation was privileged or otherwise confidential.  In fact, Guerra does not appear to have taken *any* steps to assure Mojarro-Ramirez of the confidentiality of their calls, such as by attempting to register his number as private, by calling the detention center using the special, non-recorded attorney-client phone line, which the City of Alexandria advertises on its website under the heading "Information for Attorneys," or even by identifying himself on the call and stating at the outset to any listeners that the call is privileged.[3]  *See Information for Attorneys*, City of Alexandria, VA, https://www.alexandriava.gov/sheriff/information-for-attorneys; *cf. United States v. Otunyo*, No. 18-cr-251, 2020 WL 2065041, at *9 (D.D.C. Apr. 28, 2020) (explaining that during the COVID-19 pandemic, the Department of Corrections allowed defense counsel "to use the jail's monitored telephone lines to communicate with detained defendants" and, as long as defense counsel "identif[ied] themselves immediately during the

---

[3]  The availability of these alternative ways for Mojarro-Ramirez and Guerra to communicate undercuts Guerra's claim that "inmate phone calls" are the "only realistic way" for him and Mojarro-Ramirez to communicate. Guerra Aff. ¶ 4.

recording's introduction, and affirmatively state[d] that the call is a privileged call, so as to alert prosecutors or law enforcement," the government would treat the calls as privileged (alterations in original accepted and citation omitted)). Even if Guerra had offered any advice to "guide [Mojarro-Ramirez] through the legal process," Guerra's advice would not be able to trump a common sense reading of the circumstances, which, as explained above, made clear that Mojarro-Ramirez's call was not confidential.

Third and finally, Guerra's reliance on "the standard practice in Texas" is misleading. Contrary to Guerra's bold implication, *see* Guerra Aff. ¶¶ 4–5, nobody disputes that incarcerated individuals everywhere in the United States, not only in Texas, retain their right for communications with their attorney to be protected by the attorney-client privilege. The question at issue is whether the existence—and Mojarro-Ramirez's knowledge—of a prison recording device destroyed any such privilege. The answer to this question in Texas is consistent with every "[f]ederal district court[]" and "[e]ach federal circuit court of appeals to address" "[t]he existence of attorney-client privilege on monitored prison phones": Yes. *United States v. Quinn*, No. 95-cr-730, 2013 WL 12233928, at *3–4 (N.D. Tex. Aug. 30, 2013) (concluding that conversations on monitored phones "lack[] sufficient confidentiality to be privileged," observing that "monitored prison phones . . . are antithetical to confidentiality," and rejecting the argument that an attorney's advice that a call is privileged makes the call privileged); *see also United States v. Gillock*, 445 U.S. 360, 368 (1980) ("Rule 501 requires the application of federal privilege law in criminal cases brought in federal court."); *cf. Harrelson*, 754 F.2d at 1169–70 (concluding that spousal privilege did not apply to conversations during prison visit, and observing that "[i]t is unnecessary to consult the case law to conclude that one who expects

privacy under the circumstances of prison visiting is, if not actually foolish, exceptionally naive").

In sum, even assuming that the July 2023 Call contained attorney-client privileged material, Mojarro-Ramirez waived any such privilege when he spoke to his lawyer on a recorded phone line, knowing that their conversation would be recorded.

## II.   CONCLUSION AND ORDER

For the foregoing reasons, the government's Emergency Motion to Strike, ECF No. 70, is **DENIED**.

The parties are **DIRECTED** to submit, by November 22, 2023, their positions on unsealing this Memorandum Opinion and Order and, if objection is posed to unsealing in full, to propose redactions, with explanation for any such redaction.

**SO ORDERED.**

Date:  November 15, 2023

**BERYL A. HOWELL**
United States District Judge