```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,            )  Criminal Action
                                     )  No. 17-51
vs.                                  )
                                     )
RAUL FLORES-HERNANDEZ,               )  March 8, 2023
                                     )  9:32 a.m.
            Defendant.               )  Washington, D.C.
   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF PLEA COLLOQUY**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT JUDGE**

**APPEARANCES**:

FOR THE UNITED STATES:

> KATHARINE ANN WAGNER
> U.S. Department of Justice
> 145 N Street, NE
> Washington, DC 20530
> (202) 514-4584
> Email:  katharine.wagner@usdoj.gov

> MELANIE ALSWORTH
> DOJ-CRM
> 145 N Street NE
> Washington, DC 20530
> (202) 514-0917
> Email:  melanie.alsworth2@usdoj.gov

FOR THE DEFENDANT:

> SANDI RHEE
> 228 S Washington Street
> Suite 300
> Alexandria, VA 22314
> (571) 800-6900
> Email: sandirheelaw@gmail.com

ALSO PRESENT:        TERESA SALAZAR, Spanish Interpreter

Court Reporter:      Elizabeth Saint-Loth, RPR, FCRR
                     Official Court Reporter

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

1

THE COURTROOM DEPUTY:  Matter before the Court,
Criminal Case No. 17-51, United States of America versus
Raul Flores-Hernandez.

Counsel, please come forward and state your names
for the record, starting with the government.

MS. WAGNER:  Good morning, Your Honor.
Katherine Wagner on behalf of the United States; and with me
is my colleague, Melanie Alsworth.

THE COURT:  Yes.  Good morning.

You can just step forward.

MS. RHEE:  Good morning, Your Honor.
Sandi Rhee for Mr. Raul Flores-Hernandez.

THE COURT:  Good morning, Mr. Flores-Hernandez.

How are you this morning?

THE DEFENDANT:  I am fine, thank you.

THE COURT:  All right.  So if you have any
difficulty hearing the interpreter or any problem with the
technology, just let me know.  We'll get it fixed.

This is my first hearing in my new courtroom.
Already, I can hear better.  I don't know whether you-all
noticed, but the second-floor courtroom had this air
blowing, or something.

All right.  So I understand that the purpose of
Mr. Flores-Hernandez's appearance this morning is to enter a

1     plea of guilty to Count 1 of the indictment, charging him

2     with conspiracy to distribute 5 kilograms or more of cocaine

3     for importation into the United States in violation of 21

4     U.S.C. Section 959(a), 960, and 963.

5               Is that correct, Ms. Rhee?

6               MS. RHEE:  Yes, Your Honor.  That's correct.

7               THE COURT:  Mr. Flores-Hernandez, you can just

8     stay right where you are.

9               I am going to be asking you a whole series of

10    questions this morning.  You can pull the microphone closer

11    to you.  Ms. Rhee, you can help.  It's very flexible.  You

12    can sit comfortably, and we can all still hear you.

13              So this series of questions I am going to be

14    asking you is to determine whether you understand what you

15    are doing here today, that you are competent, that you

16    understand the penalties you would be facing if you enter a

17    plea of guilty, and you understand all of the rights you

18    would be giving up by entering a plea of guilty.

19              It's only after I assure myself that you

20    understand what is going on here today that I will accept

21    your guilty plea.

22              If at any time I ask you a question that, before

23    you respond, you want to speak to Ms. Rhee about, feel free

24    to say:  Judge, I want to talk to my lawyer for a minute,

25    and I will give you that opportunity.

```
 1                    Do you understand?

 2                    THE DEFENDANT:  Yes.

 3                    THE COURT:  And in addition, if at any time I ask

 4       you a question that you want to hear again, just ask me to

 5       repeat it; and I will do that for you.

 6                    Do you understand?

 7                    THE DEFENDANT:  Yes.

 8                    THE COURT:  All right.  So before we proceed any

 9       further, I would ask my courtroom deputy to administer the

10       oath.

11                    Mr. Flores-Hernandez, please stand and raise your

12       right hand.

13                    (Raul Flores-Hernandez, Defendant, sworn)

14                    THE COURT:  Thank you.  You may be seated.

15                    You are now under oath.  That means that if you do

16       not answer my questions truthfully, you can be prosecuted

17       for perjury and for making a false statement.

18                    Any false answers that you give to me here today

19       could be used against you in that prosecution.

20                    Do you understand?

21                    THE DEFENDANT:  Yes.

22                    THE COURT:  All right.  Mr. Flores-Hernandez, what

23       is your full name?

24                    THE DEFENDANT:  Raul Flores-Hernandez.

25                    THE COURT:  And how old are you?
```

1        THE DEFENDANT:  70 years old.

2        THE COURT:  How far did you go in school?

3        THE DEFENDANT:  Third year of elementary school.

4        THE COURT:  How old were you when you last went to

5   school?

6        THE DEFENDANT:  Around nine years old, ten years

7   old.

8        THE COURT:  Do you have any difficulty reading or

9   writing in Spanish?

10        THE DEFENDANT:  Well, no.  I do read.  I can read.

11   I write a little.  I do know how to write a little.

12        THE COURT:  All right.  And where were you born,

13   Mr. Flores-Hernandez?

14        THE DEFENDANT:  Autlán de la Grana [sic], Jalisco,

15   Mexico.

16        THE COURT:  And if you are not a U.S. citizen, do

17   you understand that conviction of this offense may result in

18   your deportation, your exclusion from the United States, and

19   denial of citizenship under our immigration laws?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Have you taken any alcohol or drugs in

22   the last 48 hours or any medicine that could affect your

23   ability to understand what you are doing here today?

24        THE DEFENDANT:  No.

25        THE COURT:  Have you received any treatment

1    recently for any type of mental illness, emotional

2    disturbance, or addiction to narcotic drugs of any kind?

3              THE DEFENDANT:  No.

4              THE COURT:  And are you completely satisfied with

5    the services of your attorney in this case?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you feel that you have had enough

8    time to talk to Ms. Rhee about the case, the evidence in the

9    case, and whether or not you should enter a plea of guilty?

10             THE DEFENDANT:  Yes.  Since I arrived -- since I

11    arrived I was aware that I would plead guilty.

12             THE COURT:  Ms. Rhee, do you have any question

13    about Mr. Flores-Hernandez's competency to enter a plea

14    today?

15             MS. RHEE:  No, I don't, Your Honor.

16             THE COURT:  And does the government?

17             MS. WAGNER:  No, Your Honor.

18             THE COURT:  All right.  I do find that

19    Mr. Flores-Hernandez is responding appropriately to my

20    questions and appears competent to enter a plea today so I

21    will proceed with the rest of the hearing.

22             The next part of this hearing,

23    Mr. Flores-Hernandez, is where I describe for you the

24    constitutional rights that you hold under our law.  Listen

25    carefully to my questions.

1          I want to remind you that if you want me to repeat

2    one of my questions, let me know.  And if you want an

3    opportunity to talk to Ms. Rhee before you answer, just let

4    me know.

5          Do you understand?

6          THE DEFENDANT:  Yes.  That's fine.

7          THE COURT:  You have a right to plead not guilty

8    and to have a jury trial on the charge against you right in

9    this courtroom.  And if you decided to have a jury trial, 12

10   citizens from the District of Columbia would sit in the jury

11   box to my left, right in front of you, listen to the

12   evidence presented by the government and decide whether or

13   not -- based on that evidence and the law as I instruct

14   them, whether or not you were guilty of the crime charged.

15         Do you understand that you have a right to a jury

16   trial in this case?

17         THE DEFENDANT:  Yes.

18         THE COURT:  If you had a trial, you would have a

19   right to be represented by your lawyer at the trial and at

20   every other stage of the proceeding and, if necessary, have

21   the Court appoint counsel for you.

22         Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  If you had a trial you would have the

25   right through your lawyer to confront or cross-examine any

 1    witness against you.

 2              Do you understand that?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  If you had a trial, you would have the

 5    right to present your own witnesses if you wanted to; you

 6    would have the right to subpoena, which is a fancy word for

 7    compelling a witness to come to court to testify in your

 8    defense, if you wanted to; you would also have the right to

 9    testify yourself if you wanted to, and present evidence on

10    your own behalf if you wanted to.

11              Do you understand that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  You would not have to testify or

14    present any evidence at the trial if you did not want to

15    because you cannot be forced to incriminate yourself or

16    present evidence of your own guilt, and that cannot be used

17    against you.

18              Do you understand that?

19              THE DEFENDANT:  Yes.

20              THE COURT:  You are presumed by the law to be

21    innocent and if you chose to go to trial it would be the

22    government's burden alone to prove your guilt beyond a

23    reasonable doubt.

24              Do you understand that?

25              THE DEFENDANT:  Yes.

1          THE COURT:  If you went to trial on the charge in

2     the indictment against you, were convicted, you would have a

3     right to appeal your conviction of guilt to the Court of

4     Appeals and to have a lawyer help you prepare that appeal.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  By entering a plea of guilty to the

8     offense in the indictment against you, you are giving up

9     your right to appeal your conviction of guilt in this case

10    except in some limited circumstances, such as if you claim

11    ineffective assistance of counsel in entering your guilty

12    plea.

13         Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Now, the offense to which you are

16    pleading guilty in the indictment is a felony offense.  If I

17    accept your guilty plea and find you guilty of that offense,

18    it could deprive you not just of constitutional rights but,

19    also, of valuable civil rights, such as the right to vote,

20    the right to hold public office, the right to serve on a

21    jury, the right to possess a firearm in this country.

22         Do you understand?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand that by entering a

25    plea of guilty and being convicted of this felony offense,

1    you may also face enhanced or increased punishment if you

2    are convicted of another crime in the future?

3              THE DEFENDANT:  Yes.

4              THE COURT:  All right.  So I am now going to

5    review the factual basis for the charge.

6              Ms. Rhee, Mr. Flores-Hernandez has provided a

7    document through you titled Statement of Facts; and this

8    describes what Mr. Flores-Hernandez did in this case.

9              Mr. Flores-Hernandez, have you reviewed the

10   statement of facts and discussed it fully with your lawyer?

11             THE DEFENDANT:  Yes.

12             THE COURT:  I am going to hold up for you and I am

13   going to show you the last page under "Acknowledgment" that

14   reflects what appears to be your signature dated March 8,

15   2023; today.

16             Is that your signature?

17             THE DEFENDANT:  That is so.

18             THE COURT:  And for the record, I was holding up

19   that acknowledgment page to Mr. Flores-Hernandez.

20             Does this statement of facts fairly and accurately

21   describe what you did in this case?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And from approximately 2000 [sic], the

24   year 2000, to the date of the indictment in January 2016,

25   within the countries of Bolivia, Peru, Brazil, and Mexico,

1   did you engage in a conspiracy to distribute more than five

2   kilograms of cocaine?

3           THE DEFENDANT:  Yes.

4           MS. RHEE:  Just a correction.  It's from in or

5   around 2007.

6           THE COURT:  What did I say?

7           MS. RHEE:  2000.

8           THE COURT:  2007, yes.  I am sorry.

9           It was right there in front of me.  Thank you,

10  Ms. Rhee.

11          From 2007.  With that correction, is that correct,

12  Mr. Flores-Hernandez?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And did you intend and know that the

15  cocaine distributed pursuant to the conspiracy would be

16  unlawfully imported into the United States?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And as part of that conspiracy, did

19  you act as an intermediary who made introductions between

20  other individuals in order to facilitate international drug

21  trafficking?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And did you personally invest your own

24  funds in several loads of cocaine to move that cocaine from

25  Bolivia and Peru to Mexico?

```
1              THE DEFENDANT:  Yes.

2              THE COURT:  And do you agree that the total amount

3    of cocaine involved in the conspiracy for which you were

4    responsible was more than 150 kilograms but not more than

5    450 kilograms?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Was your participation as a

8    conspirator in those previously described acts knowing,

9    intentional, and willful?

10             THE DEFENDANT:  Yes.  Willful, yes.

11             THE COURT:  And those actions that you took as

12   part of this conspiracy were not in any way the product of

13   an accident, mistake of law or fact, duress, entrapment, or

14   public authority; is that correct?

15             THE DEFENDANT:  No.  The truth is, it wasn't.

16             THE COURT:  All right.

17             Ms. Wagner, could you please state the elements of

18   the charge against the defendant.

19             Mr. Flores-Hernandez, listen carefully because I

20   want to make sure you understand the charge.

21             MS. WAGNER:  Yes, Your Honor.

22             The elements are that from at least 2007 until the

23   defendant's arrest in June 2017, defendant agreed with one

24   or more persons to accomplish a common and unlawful plan;

25   namely, to distribute 5 kilograms or more of a mixture or
```

1    substance containing a detectable amount of cocaine --

2                THE INTERPRETER:  Your Honor, can counsel speak

3    more slowly.

4                THE COURT:  Yes.  Very.  Much more slowly.

5                Why don't you start from the beginning of the

6    elements.

7                MS. WAGNER:  Okay.  From at least 2007 through

8    June 2017, the defendant agreed with one or more persons to

9    accomplish a common and unlawful plan; namely, to distribute

10   5 kilograms or more of a mixture or substance containing a

11   detectable amount of cocaine; that the defendant knew and

12   intended that the cocaine would unlawfully be imported into

13   the United States; and that the defendant joined the

14   agreement with the intent to further its unlawful purpose;

15   and he did so willfully.

16               THE COURT:  All right.  Thank you.  Just stay

17   right where you are for a second.

18               Mr. Flores-Hernandez, do you understand the charge

19   to which you intend to plead guilty today?

20               THE DEFENDANT:  Yes.

21               THE COURT:  All right.  And I understand that

22   there is no plea agreement in this case.

23               MS. WAGNER:  That's correct, Your Honor.

24               I did -- I don't know if this is the appropriate

25   moment.  I wanted to put on the record that the government

1      did extend two plea offers.

2                THE COURT:  And this is the appropriate time.  Why

3      don't you tell me about the plea offers that were

4      extended --

5                MS. WAGNER:  Sure.  Yes.

6                THE COURT:  -- so that I can do my *Missouri v Frye*

7      colloquy.

8                MS. WAGNER:  Thank you, Your Honor.

9                So on February 1st of this year, we did extend a

10     plea offer to the defendant; it was a plea to Count 1, and

11     it also included in it -- I am not sure if Your Honor is

12     aware, but the defendant has two outstanding indictments in

13     the Southern District of California for similar charges.

14     And the agreement included a dismissal --

15               THE COURT:  Southern District of California?

16               MS. WAGNER:  Yes, Your Honor.

17               So it included a dismissal of those two

18     indictments, were the defendant to plead guilty pursuant to

19     the plea agreement.  And we did have an intention that the

20     U.S. Attorney's Office from the Southern District of

21     California would sign on to this agreement as well.

22               THE COURT:  And the charges in the Southern

23     District of California, are they the same charge pending

24     here?

25               MS. WAGNER:  They're -- yes and no, Your Honor.

1          They do have a cocaine conspiracy, international

2     trafficking conspiracy.

3          But the first indictment -- and I am just going to

4     check my notes so that I don't make any mistakes.

5          In Case 16-01996, it charged a conspiracy to

6     distribute 5 kilograms or more of cocaine for unlawful

7     importation, and also with distribution of 5 kilograms or

8     more of cocaine in violation of 21 U.S.C. 841 and 846.

9          Then the second indictment was in Case

10    No. 17-0680.  And in that case the defendant was charged

11    with conspiracy to distribute 5 kilograms or more of cocaine

12    for unlawful importation; so similar to this charge.

13         Count 2 charged him with distribution of

14    5 kilograms or more of cocaine.  And then he also had a

15    money laundering charge as well.

16         So the guidelines that were offered, the

17    calculations that were offered for that plea agreement was a

18    base-offense level of 38 points -- 38 for distributing more

19    than 450 kilograms of cocaine; there was also a 2-level

20    enhancement for bribery; a 2-level enhancement for

21    trafficking using a noncommercial airline; and a plus-4

22    enhancement for an organizer or leader.  So very similar to

23    what the guidelines were in the submission that we submitted

24    prior to this plea is what we intend to prove at a contested

25    sentencing.  It also included an appellate waiver, and the

1        usual forfeiture and other provisions of our plea agreement.

2              In the second agreement, which was extended on

3        March 1st of this year, we essentially extended the same

4        agreement but with a different guidelines calculation.  And

5        that was with the -- a base-offense level of 38 for 450

6        kilos or more of cocaine, and the plus-4 leadership

7        enhancement.  Essentially removing the bribery and aircraft

8        enhancements, but otherwise the agreement was the same.

9              Both of those had expiration dates -- although we

10       did extend the initial February 1st agreement for --

11       essentially, we extended until the 1st of March, which

12       expired on the 2nd which is when our submission was due to

13       the Court.

14             THE COURT:  So based on what I understand from the

15       submissions by the parties, given that the government is,

16       basically, going to argue for essentially the same guideline

17       determination at sentencing here as was made in the plea

18       offer, the break, so to speak, in the plea offer is that it

19       would resolve the two pending indictments against him in the

20       Southern District of California?

21             MS. WAGNER:  That's right, Your Honor.  And then,

22       of course, we'll wait to see what happens with respect to

23       acceptance of responsibility going forward.  It's hard to

24       know at this point given the delta between the factual basis

25       and what we intend to prove.  But that's for another day.

1           THE COURT:  Another day.

2           All right.  Ms. Rhee, did you communicate those

3    two plea offers to Mr. Flores-Hernandez?

4           MS. RHEE:  Yes, Your Honor.

5           THE COURT:  Mr. Flores-Hernandez, did you reject

6    both of those plea offers?

7           THE DEFENDANT:  Yes.

8           THE COURT:  All right.

9           Ms. Rhee, do you want to put anything else on the

10   record regarding that?

11          (Whereupon, the defendant and Ms. Rhee confer.)

12          THE COURT:  Ms. Wagner, do you have more to say?

13          MS. WAGNER:  No, Your Honor, unless you have more

14   for me to say.

15          THE COURT:  No.  You can be seated.

16          All right.  Ms. Rhee, do you want to step forward?

17          MS. RHEE:  Good morning again, Your Honor.

18          THE COURT:  Hi.

19          Is there anything else that you want to put on the

20   record about rejection of those two plea offers which would

21   have resolved the two pending indictments in the Southern

22   District of California?

23          MS. RHEE:  No, Your Honor, other than the fact

24   that I went over both plea offers several times with

25   Mr. Flores and we had very complete discussions.  He

1    rejected both of those knowing what was involved.

2            THE COURT:  Okay.  Thank you, Ms. Rhee.

3            All right.  Mr. Flores-Hernandez, this is now the

4    point where I have to review all of the penalties you would

5    face if I accept your guilty plea here today.

6            I know you have probably reviewed this in detail

7    with Ms. Rhee so this may be repetitive for you and things

8    you are already aware of.  But it's such an important

9    consideration for you, I have to make sure that you have

10   been told about the penalties you face.

11           Under the statute to which you are entering a plea

12   of guilty at 21 U.S.C. Section 960(b)(1), the maximum term

13   of imprisonment that you face if I accept your guilty plea

14   is a term of life imprisonment, a mandatory minimum term of

15   10 years' imprisonment; a supervised release term of at

16   least 5 years and potentially up to life, there is no cap on

17   the supervised release; a maximum fine of $10 million; a

18   special assessment of $100, which is a charge for every

19   felony offense of conviction.

20           Do you understand that those are the statutory

21   penalties that you face if I accept your guilty plea here?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Do you understand that you have no

24   option of probation?

25           THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that because of your

2     conviction you could be subject to forfeiture of any

3     property that is sufficiently connected to your offense or

4     the proceeds derived from your offense?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Now, in determining your sentence, I

7     am also obligated to consider the sentencing range

8     determined under the guidelines manual for a person with

9     your criminal history.

10          I appreciate that the parties dispute how the

11     guidelines will be determined in your case.  And the

12     government's position is that the guidelines provide a far

13     more serious, severe, sentencing range than the calculations

14     proposed by your lawyer, Ms. Rhee.

15          Do you understand that there is this dispute

16     between you and the government about how the guidelines

17     apply in your case?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand that my job, as the

20     sentencing judge, is to resolve those disputes at the time

21     of your sentencing?

22          Do you understand that?

23          THE DEFENDANT:  Yes.  Yes.

24          THE COURT:  Do you understand that in making

25     necessary findings about what facts support particular

1    guideline determinations that could make the guideline

2    sentencing range more severe or less severe that the

3    government must establish those facts at a sentencing

4    hearing by a preponderance of the evidence?

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And since the government's position as

8    to how the guidelines apply in your case is the most severe

9    sentencing range that would result, I am going to review

10   that with you.  I don't know how I am going to determine the

11   sentencing range right now.  We're going to have a hearing

12   where the government is going to present evidence about it.

13             But I want you to understand the most serious

14   sentencing range you might face under the guidelines so I am

15   going to review the government's position with you here

16   today.

17             Do you understand?

18             THE DEFENDANT:  Yes.

19             THE COURT:  So the government's position is that

20   your offense conduct, as part of the conspiracy to

21   distribute cocaine, knowing and understanding that it would

22   be imported into the United States, is that this conspiracy

23   involved 450 kilograms or more of cocaine which, under the

24   applicable guideline at Section 2D1.1(c)(1), starts with a

25   base-offense level of 38.  That base-offense level is

1    increased by various specific offense characteristics that

2    the government will take the position applied in your case.

3           And the government's position is going to be that

4    this base-offense level of 38 should be increased by 2 more

5    offense levels because the conspiracy imported controlled

6    substances under circumstances in which an aircraft, other

7    than a regularly scheduled commercial air carrier, was used;

8    another 2 offense levels for bribing or attempting to bribe

9    a law enforcement official; and another 4 offense levels

10   because the government's view is that you were an organizer

11   or a leader in the criminal activity at issue which involved

12   5 or more participants.  And then that would produce a total

13   offense level of 46 which produces a sentencing range of --

14   recommendation of life imprisonment.  And if that offense

15   level of 46 is decreased by 3 levels for acceptance of

16   responsibility, it would result in a total offense level of

17   43, which would also result in a guidelines recommended

18   sentence of life imprisonment; all predicated on

19   understanding that your criminal history category is 1,

20   which is the lowest criminal history category.

21           Do you understand that that is what the

22   government's position is likely to be at the time of

23   sentencing about how the guidelines apply in your case?

24           Do you understand that?

25           THE DEFENDANT:  Yes.

1           THE COURT:  And you understand that's just an

2     estimate of how the guidelines may apply in your case, and

3     that I will make that final determination after I hear the

4     evidence presented at the sentencing hearing.

5           Do you understand that?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Do you understand that the sentence

8     imposed may be different from the estimate that your

9     attorney thinks it may be?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Now, in determining your

12    sentence, I am also obligated to consider other sentencing

13    factors which are codified at a statute at 18 U.S.C. Section

14    3553(a).  And that statute requires me to consider the

15    nature and circumstances of the offense; your history and

16    characteristics; the need for the sentence imposed to

17    reflect the seriousness of the offense; promote respect for

18    the law; provide for just punishment; afford adequate

19    deterrence to criminal conduct; protect the public from

20    further crimes by you, Mr. Flores-Hernandez; the kinds of

21    sentences available; the sentencing guidelines; and the need

22    to avoid unwarranted sentence disparities among defendants

23    with a similar criminal history who committed similar kinds

24    of criminal conduct.

25          Do you understand I have to consider all of those

1    factors in fashioning an appropriate sentence in your case?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Now, has anyone, your attorney, law

4    enforcement officers, the prosecutors, or any other person

5    with whom you have come in contact since your arrest,

6    promised or suggested to you that merely because you are

7    pleading guilty that I will give you a lighter sentence?

8          THE DEFENDANT:  No.  No.

9          THE COURT:  Has anyone forced, threatened, or

10   coerced you in any way into entering a plea of guilty?

11         THE INTERPRETER:  Your Honor, I think the headset

12   might have died.  He lost signal.

13         THE COURT:  Okay.  Let me repeat that question.

14         Has anyone forced, threatened, or coerced you in

15   any way into entering a plea of guilty?

16         THE DEFENDANT:  No.

17         THE COURT:  And are you entering this plea of

18   guilty voluntarily and of your own free will because you are

19   guilty and for no other reason?

20         THE DEFENDANT:  That is correct.

21         THE COURT:  Mr. Flores-Hernandez, how do you now

22   plead to the charge in Count 1 of the indictment for

23   conspiring to distribute 5 kilograms or more of cocaine,

24   knowing and intending that the cocaine would be unlawfully

25   imported into the United States in violation of 21 U.S.C.

1        Sections 959(a), 960(b)(1), and 963; guilty or not guilty?

2              THE DEFENDANT:  Guilty.

3              THE COURT:  I am satisfied that

4    Mr. Flores-Hernandez is fully competent in making an

5    informed decision today; he understands the nature of the

6    charge, the consequences of the plea, his plea appears

7    knowing and voluntary and, therefore, I do accept his plea

8    of guilty, and he is now adjudged guilty of that offense.

9              So, Counsel, I would like to propose a sentencing

10   date of Thursday, June 8, at 9:30.

11             I want to just ask Ms. Wagner, if you know at this

12   point, how long of a sentencing hearing should I expect

13   before I actually firmly set that date?

14             MS. WAGNER:  Sure, Your Honor.

15             We would be expecting to bring several witnesses

16   in to testify so I would anticipate cross-examination of

17   those witnesses.  I would expect two days, or I would put

18   aside two days in order to not have to resume at a second

19   later date.

20             THE COURT:  All right.  Let me just check my

21   calendar then.  It may be then that --

22             MS. WAGNER:  We do have some individuals we will

23   need to move through the prison system so it may be -- if

24   possible, a little extra time might be warranted just to

25   make sure that --

1    THE COURT:  You mean rather than June, push it

2    back a little bit?

3    MS. WAGNER:  Ms. Rhee and I have discussed that.

4    I know she also has a trial in July.

5    THE COURT:  When in July?

6    MS. RHEE:  I believe my trial starts on July 14th,

7    Your Honor.  It's in front of Your Honor.

8    THE COURT:  Yes.

9    MS. WAGNER:  The Javier Algredo trial, Your Honor.

10    THE COURT:  That starts on the 14th.

11    Ms. Rhee, you are going to be living with me for

12    quite some time, aren't you?

13    I really would like to get this wrapped up.  I

14    could do this June 15 and 16.

15    MS. WAGNER:  Your Honor, I am going to defer to

16    defense counsel.  The government is available, but her

17    schedule is more complex than mine.

18    THE COURT:  Or the week of June 12th.

19    Pick your date, Ms. Rhee.

20    MS. RHEE:  Your Honor, I can do the 15th and the

21    16th.

22    THE COURT:  All right.  You know what, I am going

23    to do it on June 14th and June 15th just in case -- I have

24    my regular criminal calendar on the 16th.  So I won't be

25    interrupted by that, we can just plow through the evidence

1        in this case.

2              Are you anticipating that you are going to want an

3        opportunity for briefing afterwards or are you anticipating

4        that the evidence is going to be such that, after hearing

5        argument, I will be able to make my determinations right

6        then and there?

7              Ms. Rhee, I will ask you.

8              MS. RHEE:  I think we'll be presenting evidence

9        also, Your Honor.  So maybe a very short briefing period

10       would be helpful for us; for the defense.

11             THE COURT:  Okay.  Because you all know your case

12       a lot -- you are much more familiar with the evidence and

13       the disputes than I am.  I am really sort of trusting you to

14       tell me how I need to schedule myself in some ways.

15             We'll set this down then for the 14th at 9:30.  If

16       things spill over into a third day, it will spill over into

17       that Friday.  Starting on Wednesday, we will have Wednesday

18       and Thursday; and then we'll see how it goes and whether

19       supplemental briefing will be necessary post hearing or not,

20       or whether I can make my factual determinations based on the

21       evidence presented then and proceed to sentencing that day,

22       which leaves Mr. Flores-Hernandez a little bit up in the air

23       as to whether he is actually going to leave the sentencing

24       hearing having been sentenced or having to await my final

25       decision on sentencing.  But that's life.  Okay.  We'll set

 1    that down.

 2              All right.  Are there any further matters we need

 3    to take up before I excuse you?

 4              MS. RHEE:  Just briefly, Your Honor.

 5              Mr. Flores-Hernandez is still at the Central

 6    Virginia Regional Jail.  I received an email from Marshal

 7    Leotis Brown.  I couldn't get in touch with him so I

 8    responded to his email, giving him my cell phone number

 9    asking for a call back.

10              THE COURT:  Let me just explain, Ms. Rhee.  I did

11    ask to have Mr. Flores-Hernandez transferred to the D.C.

12    jail, but it's far too complicated with the number the

13    issues.

14              MS. RHEE:  I understand.

15              THE COURT:  So he couldn't be moved to the D.C.

16    jail.  But I think my conversations with our Marshal

17    Ruffin -- he was going to consult with you or talk to you or

18    have his staff talk to you about moving him to a closer

19    facility.  But I can't -- he is in the custody of the

20    Attorney General and the marshals, so I can't tell them

21    where to put him.

22              MS. RHEE:  I will reach out to him again because

23    closer can mean Rappahannock.  And although Rappahannock is

24    closer, they have conditions that make it very difficult for

25    defense counsel to visit, and you have to make an

1    appointment prior --

2            THE COURT:  I see.  So has he been moved to

3    Rappahannock?

4            MS. RHEE:  No, no.

5            THE COURT:  But that's they're proposal, to move

6    him closer to Rappahannock?

7            MS. RHEE:  I think that's the only closer

8    jail that would be available to him.

9            THE COURT:  You prefer to keep him where he is

10   than to move to Rappahannock at this point?

11           MS. RHEE:  Yes, yes.  I will reach out to Marshal

12   Brown.

13           THE COURT:  Well, the marshals are trying to be

14   accommodating, but they can only work with what they have

15   got and they have to adhere to other security protocols,

16   both for the protection of the defendant and others.

17           MS. RHEE:  Yes.  I understand.  Thank you, Your

18   Honor.

19           THE COURT:  If you need my assistance, Ms. Rhee,

20   you know where to reach me, but I think I have done what I

21   can on that score.

22           MS. RHEE:  Thank you so much.

23           THE COURT:  If there is nothing further from the

24   government --

25           MS. WAGNER:  No, Your Honor.  Thank you.

1      THE COURTROOM DEPUTY:  Your Honor, we have to

2   vacate the trial.

3      THE COURT:  Yes.  I will now vacate the trial date

4   and the pretrial conference.

5      Thank you, Ms. Gumiel, for getting my schedule

6   clear.

7      I see we have a waiver of trial, right, and the

8   statement of facts.  Good.  You are all excused.  Thank you.

9      MS. RHEE:  Thank you, Your Honor.

10      MS. WAGNER:  Thank you, Your Honor.

11      THE DEFENDANT:  Thank you.

12      (Whereupon, the proceeding concludes, 10:16 a.m.)

13      * * * * *

14      **CERTIFICATE**

15      I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
certify that the foregoing constitutes a true and accurate
16   transcript of my stenographic notes, and is a full, true,
and complete transcript of the proceedings to the best of my
17   ability.

18      This certificate shall be considered null and void
if the transcript is disassembled and/or photocopied in any
19   manner by any party without authorization of the signatory
below.

20

21      Dated this 5th day of September, 2023.

22      /s/ Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter

23

24

25